## KIRCKOF PLUMBING & HEATING COMPANY v. STATE.

240 N. W. 2d 804.

December 5, 1975—No. 45314.

*O'Brien, Ehrick, Wolf, Deaner & Downing, Thomas Wolf,* and *Steven S. Fuller,* for appellant.

*Warren Spannaus,* Attorney General, and *J. Patrick Wilcox,* Special Counsel, for respondent.

Heard before Sheran, C. J., and Kelly and MacLaughlin, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Plaintiff, Kirckof Plumbing & Heating Co., appeals from an order of the Ramsey County District Court dismissing its cause of action against the State of Minnesota for failure to comply with the time limitations of Minn. St. 3.751, subd. 2.[1] We affirm.

In June 1970, the state awarded plaintiff the contract for mechanical contracting work on a new science building to be constructed at Mankato State College. Almost from the start of construction, due to strikes, inclement weather, and other various delays, work on the project was delayed and was not even substantially completed by the contractually established date of December 17, 1971. By agreement of all parties, the date was extended to March 1, 1972, which also passed unfulfilled. By July 1972, a substantial amount of the work called for in plaintiff's contract had finally been completed and the state architect's office set July 17, 1972, as the date of substantial completion, a certificate of which was sent to plaintiff on August 28, 1972.

---

[1] Minn. St. 3.751 deals with contract claims against the state. Subd. 2 provides: "No action shall be maintained unless commenced within 90 days after the plaintiff has been furnished by the state with a final estimate under his contract, or, at the election of the plaintiff, within six months after the work provided for under his contract is completed."

Following further work and inspections, the state architect notified the parties that September 25, 1972, was to be the established date of final completion of the contract and inception of all guarantees, pending completion of all remaining corrective work items.[2] This date constituted final acceptance by the state of the building which was already occupied. During late 1972 and most of 1973, these repairs, along with work on several change orders, or supplementary agreements, were ongoing. Plaintiff still had men and materials at the project site until early January 1974.

All during this period of time since late 1972, plaintiff and the state were in disagreement over liquidated damages owed the state due to the delayed completion date. After negotiations proved unsuccessful, on June 13, 1973, the state commissioner of administration, Richard Brubacher, wrote to plaintiff, notifying it that the state intended to permanently withhold $38,905.72 as liquidated damages.

On January 28, 1974, plaintiff commenced this action against the state alleging, inter alia, the wrongful withholding of the above sum. The state's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted was granted by the district court because the time limitations for filing a claim against the state provided in Minn. St. 3.751, subd. 2, had passed prior to plaintiff's service of its complaint. From the order dismissing the action plaintiff appeals to this court.

Plaintiff raises two issues, both of which require us to interpret the statute involved: (1) Whether the 6-month limitation period of Minn. St. 3.751, subd. 2, commences upon the final date of completion of any type of work on a project; and (2) Whether the June 13, 1973, letter from the state to plaintiff, informing

---

[2] These remaining items, referred to as "punch list items" are defined in the contract and viewed in the industry as corrective work done on contract items originally done in a defective manner. See, footnote 3, *infra.*

it of the total dollar amount to be withheld under the contract as liquidated damages, constituted a "final estimate" for purposes of the alternative 90-day limitation of Minn. St. 3.751, subd. 2.

■ The statute in question states in pertinent part: "No action shall be maintained unless commenced * * * within six months after the work provided for under his contract is completed." This statute has never been the subject of judicial interpretation. In applying the statute to the facts, the lower court ruled that contract work was completed on September 25, 1972, the date on which the state accepted the building as completed and ready for use; and that plaintiff ratified this completion date on February 1, 1973, by a letter to the consulting engineer. Thus, the contract completion date was some 16 months prior to the commencement of plaintiff's suit, and the action is barred by the 6-month statute of limitations. Plaintiff, however, alleges that the intent of the legislature in passing the law was that completion of work under a contract should not be found until all work of any type had ceased and all the contractor's men and materials had been removed from the job site. We conclude that the trial court ruled correctly on this issue.

The state architect's office notified all parties of the September 25 date of final completion in a letter dated October 10, 1972, stating:

"* * * It was also stated at this meeting that approximately 80% of *corrective work* was complete. The architects recommended that the building be accepted as complete, effective 25 September 1972, pending completion of the remaining work items." (Italics supplied.)

This letter is not controlling, but is merely part of the evidence considered by the trial court. The purpose of the letter was to point out that all that remained to be done on the project was corrective work on items originally completed under the contract but done in a defective manner. All original mechanical con-

tracting work mandated by the contract had been finished by plaintiff as of this date. All that remained was to complete or correct minor deficiencies as they presented themselves. These items, known in the trade as "punch list items," are defined in Article 13.2 [3] of the contract. In this case we need not decide if such repair work constitutes "work provided for under his contract" within the meaning of Minn. St. 3.751, subd. 2, despite plaintiff's urging that we so hold. We do not take that step because it appears to us that *even if* the various punch list repairs are viewed as contract work within the statutory language, all these items were completed prior to July 28, 1973.[4] This is evidenced by a site inspection report of January 22, 1973, prepared by the consulting engineers which listed various repairs which remained to be done. More importantly, on February 6, 1973, M. A. Kirckof, an officer of plaintiff contractor, replied:

---

[3] Article 13.2 provides in part: "13.2.1  The Contractor shall promptly correct all Work rejected by the Architect as defective or as failing to conform to the Contract Documents whether observed before or after Substantial Completion and whether or not fabricated, installed or completed. The Contractor shall bear all costs of correcting such rejected Work, including the cost of the Architect's additional services thereby made necessary.

"13.2.2  If, within one year after the Date of Substantial Completion or within such longer period of time as may be prescribed by law or by the terms of any applicable special guarantee required by the Contract Documents, any of the Work is found to be defective or not in accordance with the Contract Documents, the Contractor shall correct it promptly after receipt of a written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition.

"13.2.3  All such defective or non-conforming Work under Subparagraphs 13.2.1 and 13.2.2 shall be removed from the site where necessary, and the Work shall be corrected to comply with the Contract Documents without cost to the Owner."

[4] July 28, 1973, is 6 months prior to the date of institution of plaintiff's action, January 28, 1974.

"I hereby certify that all items listed have been personally checked by me and are completed or corrected to the best of our ability."

This letter followed plaintiff's February 1, 1973, request, by letter to the consulting engineer, Bruch and Morrow, Inc., for a certificate of completion from the architect certifying that the job had been completed according to the plans and specifications of the contract. In addition, portions of a March 6, 1973, letter from the supervising architects, Sovik, Mathre, and Madson, to the state architect's office regarding the final inspection, forecloses plaintiff's argument that repair work was ongoing all during 1973:

"We have received recommendation from our engineers that Mechanical and Electrical construction work is complete and that their corrective items have also been accomplished and that any work presenting itself hereafter to be done as a part of the guarantee."

Since the punch list items were all completed by early 1973, plaintiff's claim falls. We leave to a future case where the maintenance of the action actually depends upon whether corrective work constitutes original contract work, as contemplated by Minn. St. 3.751, subd. 2, to decide that issue.

Plaintiff next claims that several change orders for additional work on vacuum pumps during 1973 extended the date of completion to be within the 6-month time limitation. What plaintiff ignores is the basic fact that Articles 12.1.2 and 15.12 of the contract define change orders to be separate signed supplementary agreements for additional work. Each is a new contract in and of itself. Thus, the change orders upon which plaintiff relies are irrelevant to when the original contract work was completed. Minn. St. 3.751, subd. 2, when it refers to work provided for under the contract, is referring to the original construction contract, and not additional independent, supplementary contracts denominated as change orders.

We therefore affirm the lower court's finding that contract completion within the meaning of the statute occurred on September 25, 1972. Since plaintiff's suit was not commenced within 6 months thereafter, the lower court correctly held that plaintiff had not brought the action within the 6-month time limit in § 3.751, subd. 2.

■ The alternative time limitation which operated upon plaintiff's contract claim, as stated in Minn. St. 3.751, subd. 2, provides:

"No action shall be maintained unless commenced within 90 days after the plaintiff has been furnished by the state with a final estimate under his contract * * *."

The lower court concluded that Commissioner Brubacher's letter dated June 13, 1973,[5] fulfilled this requirement, and thus plain-

---

[5] STATE OF MINNESOTA
DEPARTMENT OF ADMINISTRATION
Saint Paul 55155

June 13, 1973

Mr. Marshall Kirckof
Kirckof Plumbing and Heating
P. O. Box 6350
Rochester, MN. 55901

Dear Mr. Kirckof:

On December 20, 1972, members of my staff and I met with you to discuss the assessment of liquidated damages of the Mankato State College Science Building project. At that meeting I requested that if any of the prime contractors believed they should not be held liable for liquidated damages arising from the late completion date of said project they should submit definitive evidence to support said contention. Additionally, it was suggested that the three prime contractors negotiate among themselves regarding apportionment of the $138,000 which the state is withholding as liquidated damages on the project.

In our judgment, the state has received no good faith response or proposal from [Kirckof] Plumbing and Heating regarding your liability, nor does there appear to have been any efforts on the part of your company or the other prime contractors to effect a settlement among yourselves. *Therefore, please be advised that the state intends to perma-*

tiff's claim lapsed 90 days later on or about September 13, 1973. Suit was not brought until January 28, 1974.

Plaintiff asserts that the letter cannot be a "final estimate" of the exact dollar amount due under the contract since from the letter it could only get a "general idea" of what amount remained owing. First of all, we must note that nowhere does the statute require, nor does plaintiff claim, that the words "final estimate" must appear on the statement which is furnished as the final estimate.

In any event, we disagree with plaintiff's claim. The total contract price of $2,303,000 was clearly set forth on the original contract. Since this amount remained unaltered until the date of the commissioner's letter, all plaintiff had to do was subtract the amount withheld, $38,805.72, to get a final estimate of $2,264,194.28. The finality of the state's position can be seen from (1) the language of the June 13 letter, expressing the intent to "permanently withhold" the sum; and (2) Article 15.7 of the contract [6] making the commissioner's decisions final and binding on the parties.

---

*nently withhold $38,905.72 from your contract and is assessing same as liquidated damages* against your company for the late completion of the subject project. [Italics supplied.]

> Very truly yours,
> /s/ Richard L. Brubacher
> RICHARD L. BRUBACHER
> Commissioner

[6] The contract provides in part: "15.7 Modification of Paragraph 7.10, ARBITRATION: Delete Subparagraphs 7.10.1 and 7.10.2 and substitute the following therefor:

"7.10.1  In case any question, dispute or controversy arises between the State and the Contractor out of any provision of the Contract Documents, and for which a decision is not otherwise provided for in the Contract Documents, such dispute or controversy shall be referred to the Commissioner of Administration for adjustment, and his decision shall be final and binding on both parties.

"7.10.2  In case any question, dispute, or controversy arises between the Contractor and other specialists, consultants, or contractors separately employed by the State, such dispute or controversy shall be re-

Plaintiff next claims that a final estimate could not be given because the several change orders during 1973 altered the amount due and owing under the contract, which would not be determined from the June 13 letter. This argument is not persuasive since, as we view them, the various change orders must be considered as independent from the original contract. Thus, they really need not be considered as altering the original contract price, nor considered relevant in any respect.[7]

We therefore hold that the June 13, 1973, letter from the commissioner of administration to plaintiff, informing it of the amount of contract money to be permanently withheld as liquidated damages, did suffice as a "final estimate" within the meaning of Minn. St. 3.751, subd. 2.

Based on our rulings on the two issues raised, we affirm the order granting the state's motion to dismiss based on plaintiff's failure to comply with the alternative time limitations of the statute.

Affirmed.

On April 2, 1976, the following opinion was filed:

ON PETITION FOR REHEARING

PER CURIAM.

Appellant argues that our affirmance of the entire judgment below was not warranted in view of our opinion. It maintains that its cause of action included certain change orders, and, since

---

ferred to the Commissioner of Administration whose decision shall be final and binding upon all parties."

[7] Even if we were to include these change orders as work on the original contract, the final amount due to plaintiff could have been determined by referring to the June 13 letter and from the last change order received prior to that letter. Upon the face of each change order was a "contract summary" which contained the revised price up to and including the date of the change order. Since the final change order was signed by plaintiff some two and one-half months prior to June 13, the final estimate could easily have been determined by subtracting the amount to be withheld ($38,905.72) from the revised figure of the last change order.

we held those orders to be in the nature of separate contracts, appellant should at least be allowed to proceed with that part of its action based on those orders. Respondent flatly denies that change orders were part of the original cause of action. Although appellant did not raise this argument below or in this court, we elect to consider it because we would not unfairly prejudice appellant by requiring it to anticipate our holding that change orders are separate contracts. Our review of the record reveals support for appellant's position. While the first and second causes of action in appellant's complaint clearly refer only to the main contract and not to change orders, paragraph VIII of the third cause of action is as follows:

"Defendant delayed and interfered with plaintiff's work progress while considering change orders for an unreasonable period of time and issuing change orders in an unreasonable manner, all to plaintiff's damage."

This paragraph, fairly read, might be construed to refer to breach of separate change-order contracts. Therefore, we modify the last paragraph of our opinion to provide:

We affirm the court's order granting the state's motion to dismiss based on plaintiff's failure to comply with the alternative time limitations of the statute except as to that part of the third cause of action, paragraph VIII, which alleges damage arising out of change orders. We remand to the district court for further proceedings on that part of this cause of action. Of course, our decision is without prejudice to respondent to raise any defenses against that part of appellant's cause of action.

Except for the discussion above, we find appellant's petition for rehearing to be without merit and we hereby deny the same.

The trial court's order is modified, petition for rehearing is otherwise denied, and the case is remanded for further proceedings consistent with the opinion and this addendum.

Costs and disbursements are to be taxed by the State of Minnesota against plaintiff-appellant.